# Richmond

Citizens National Bank of Covington, Va. v. McDannald.

November 12, 1914.

1. Bills and Notes—*Gaming Consideration—Bona Fide Holder—Negotiable Instruments—Code, Section* 2836.—The fact that the endorser of a note knew that the proceeds of the note were to be used by the maker in gambling in stocks cannot affect the rights of the bank which discounted the note for the maker in ignorance of the use to be made of the money. It is the business of a bank to lend money and it is under no obligation to inquire of the borrower what he wants the money for, nor is it to be affected by any use which the borrower chooses to make of the money. Such a discount by the bank is not within the purview of section 2836 of the Code, relating to gaming contracts.

2. Bills and Notes—*Gaming Consideration—Bona Fide Holder—Transfer to One with Notice—Negotiable Instruments.*—Such a note as is mentioned in the preceding paragraph being valid in its creation, it is not affected by the circumstances that it subsequently passed into the hands of the endorser, who had notice of the object to which the avails were to be applied. The general rule is that if a person with notice purchase from one without notice, he is entitled to stand in the latter's shoes, and take shelter under his good faith.

Appeal from a decree of the Circuit Court of Bath county. Decree for the defendant. Complainant appeals.

*Reversed*

The opinion states the case.

*J. T. McAllister,* for the appellant.

*H. H. Byrd,* for the appellee.

WHITTLE, J., delivered the opinion of the court.

In the year 1907 C. L. McDannald, the appellee, who at that time was a resident of Hot Springs, Virginia, borrowed $1,200 from the Citizens National Bank of Covington, Virginia, for which sum he gave his negotiable note with E. F. Carpenter as accommodation endorser. Subsequently McDannald paid the bank $500 by way of curtail and gave a renewal note for $700 with Carpenter as endorser. When the renewal note became due it was protested for nonpayment; and thereupon the bank, suing for the benefit of Carpenter, brought an attachment in equity against McDannald (who in the meantime had become a nonresident of the State) to subject an interest in real estate to which the defendant was entitled to the discharge of the debt.

The main defense relied on by McDannald was that the money for the loan of which the original note was given was intended to be used, and was in fact used, to keep up margins on a stock-gambling transaction—that is to say, in payment of the difference between the buying and selling price of certain stock which was not intended to be delivered—and that Carpenter had notice of the use to be made of the money. For that reason the circuit court was of opinion that the suit could not be maintained and dismissed the bill.

We may assume that the money borrowed by McDannald was to be used in a wagering transaction within the meaning of section 2836 of the Code, of the nature of which Carpenter had notice, but the question still remains, does the case come within the proscription of the statute?

The section reads as follows: "Every contract, con-

veyance, or assurance, of which the consideration, or any part thereof, is money, property, or other thing won or bet at any game, sport, pastime, or wager, or money lent or advanced at the time of any gaming, betting or wagering, to be used in being so bet or wagered (when the person lending or advancing it knows that it is to be so used) shall be void."

The $1,200 for which the original note was given was not loaned to McDannald by Carpenter but by the bank, and it is neither averred in the pleadings nor proved that the bank knew the purpose for which the money was to be used. It was the business of the bank to lend money, and it was under no obligation "to inquire of the borrower what he wanted the money for, nor is it to be affected by any use which the borrower chooses to make of the money." *Krake* v. *Alexander,* 86 Va. 206, 210, 9 S. E. 991, 992. The burden rested upon the borrower to prove that he was engaged in a stock-gambling transaction and that the bank knew the unlawful use to which the money was to be applied. *McIntyre* v. *Smyth,* 108 Va. 736, 62 S. E. 930.

It is plain that the case is not covered by the statute. The note being valid in its creation, it was not affected by the circumstance that it subsequently passed into the hands of a holder with notice of the object to which the avails were to be applied. It was a valid security in the hands of the bank, and therefore the bank "was entitled to have the whole world for its market," and could transmit a complete title to Carpenter, although he had notice of the use that McDannald intended to make of the money; "the general rule being that if a person with notice purchase from one without notice, he is entitled to stand in the latter's shoes and take shelter under his good faith." *Aragon Coffee Company* v. *Rogers,* 105 Va. 51, 55, 52 S. E. 834, 844.

It follows from these views that the decree of the circuit court must be reversed, and the case remanded for further proceedings not in conflict with this opinion.

*Reversed.*